Moncure, J.
delivered the opinion of the court. These three cases are precisely alike, and present the same questions for decision. They were actions of ejectment brought in the Circuit court of the city of Biehmond. In each of them the declaration was filed at rules, on the first Monday in February, 1860, with proof of service of notice thereof according to law; andthere *425 upon was entered a rule upon the defendants to appear and plead at the next rule day. At which day, to-wit: on the first Monday in March, 1860, the defendants having failed so to appear and plead, though duly served with a copy of said rule, their default was entered and judgment given against them. At the next term of the court, and after the fifteenth day thereof, the defendants appeared and moved the court for leave to plead to issue, and set aside the office judgment; but the court, being of opinion that the office judgment became final on the fifteenth day of the term (under section 44 of chapter 171 of the Code), not having previously been set aside, overruled the said motion; to which opinion and decision of the court the defendants excepted: and they after-wards applied for and obtained a supersedeas to the judgment.
It is contended that the judgment is erroneous on one of two grounds, viz: 1st, that section 44, of chapter 171 of the Code, does not apply to an action of ejectment; and, if it does, 2ndly, that it was competent for the court after the fifteenth day of the term, for good cause shown, to permit the defendants to plead to issue and set aside the office judgment; and good cause was in fact shown.
We will proceed to consider the first of these grounds to-wit: Whether the said section applies to an action of ejectment. It is in these words:
“Every judgment entered in the office in a ease wherein there is no order for an enquiry of damages, and every non-suit or dismission therein, shall, if not previously set aside, become a final judgment, if the case he in the general or a Circuit court, of the last clay of the next term, or the fifteenth day thereof (whichever shall happen first), and if it be in a county or corporation court, of the last day of the next quarterly term, and have the same effect, by way of lien or otherwise, as a judgment *426 ren^ere^ *n the court at sucli 'term. Every such, judgment for any plaintiff shall be for the principal sum due, with interest thereon from the time it became payable (or commenced bearing interest) till payment, unless it be in such action as is mentioned in the 11th section of chapter 144, in which ease it shall be according to that section.”
The above section, it will be perceived, is expressly confined to office judgments in cases-wherein there is no order for an enquiry of damages, and the question at once aiqseSj wliat are those cases ? The next two preceding sections answer the question. The 42d section, providing for an office judgment against a defendant in default, directs that “judgment shall be entered against him, with an order for the damages to be enquired into, when Such enquiry is proper.” The 43d section is in these words:
“There need be no such enquiry in an action of debt upon any bond or other writing for the payment of money, of against the drawer or endorsers of a bill of exchange or negotiable note, or in action of debt or sci-re facias upon a judgment or recognizance.”
Then follows the 44th section before recited, commencing with the words, “Every judgment entered in the office in a case wherein there is no order for an enquiry of damages;” thus obviously referring to the cases mentioned in the 43d section, and having the same meaning as if the 44th section had commenced in these words : “Every judgment entered in the office in an action of debt upon any bond or other writing for the payment of money,” &c., as set out in the 43d section. That the 44th section was intended to be confined to those eases, is further shown by the latter branch of the section, which declares, that “ Every such judgment for any plaintiff shall be for the principal sum due, with interest thereon from the time it became payable,” &e. *427 The terms “every such judgment” here used, relate to the terms, “every j udgment,” &c., in the former branch of the section; and the words, “shall be for the sum due,” &c., are strictly applicable only to such actions as are mentioned in the 43d section.
The 43d section is the only law which dispenses with the necessity for an enquiry of damages; which, therefore, is necessary in every ease not enumerated in that section, of an office judgment against a defendant. Before the enactment of that section, such an enquiry was dispensed with, only in an action of debt upon bond, bill, promissory note, or other writing for the payment of money or tobacco. In every other action in which a judgment was obtained in the office by the plaintiff, an order for an enquiry of damages, was made at the same rule day at which the conditional judgment was confirmed. 1 Rob. Pr. old ed. p. 170. And the law declared, that “all judgments by default, obtained in the office for want of appearance or plea, in which no writ of enquiry shall be awarded, and which shall 'not be set aside on some day of the next succeeding term; and all non suits and dismissions obtained in the office and not so set aside, shall be considered as final judgments of the last day of the term, and executions may issue thereupon accordingly,” &c. 1 R. C. 1819,. p. 508, § 79. There have been several decisions of this court upon the construction of that law; most which are stated ill 1 Rob. Pr. cited supra.
In Hunt, &c., v. McRae, 6 Munf. 454, the declaration was in debt for money lent, but said nothing of any contract in writing, and a judgment was confirmed in the office which became final. This court was of opinion, that the judgment was erroneous, in being made final on a declaration claiming a debt due for money loaned, and not alleged to be founded on any specialty, bill, or note in writing. It was therefore reversed, and *428 caiIse remanded for a writ of enquiry to be executed, unless the defendant should plead to issue.
Metcalfe v. Battaile, Gilm. 191, it was held that a neg°tiable note was not, as to the indorser, a note for the payment of money, within the meaning of the law in question; and that, consequently, judgment could not q,e ren(jere¿ jn gueh case, without the intervention of a jury. That was an action of debt against the indorser of the note; whose contract, the court said, was not a writing for the payment of money absolutely, but a collateral contract to pay it under certain circumstances.
In Hatcher v. Lewis, 4 Rand. 152, a joint action of debt was brought against drawer and 'endorsers of a negotiable note, and it was held that an office judgment could not be confirmed against all or either of the defendants without a writ of enquiry.
In Rees v. Conococheague Bank, 5 Id. 326, the action was against the maker of a note, which was protested for non payment, and the protest had this indorsement upon it, “$550 has been received, at sundry times, on account of the within note, July 19th, 1819.” An office judgment was entered for the whole amount of the note, without allowing the credit. There was reason-to believe that the plaintiff intended to contest the credit. This court was of opinion, that “a final judgment, when no plea is filed, may be rendered in the office at rules for principal and interest, when the action is founded upon any instrument in writing for the payment of an ascertained sum of money. But if the plaintiff, by any paper filed by himself, shows that the defendant is entitled to a credit, the judgment ought either to be entered subject to such credit, or, if the plaintiff refuses to take a judgment in that way, a writ of enquiry should be awarded.” And’ accordingly the judgment was reversed,' and the cause remanded with direction to award a writ of enquiry.
*429 In Shelton's ex'ors v. Welsh's adm'rs, 7 Leigh 175, the action was debt upon a decree ; and an oince j udgmeat was entered and confirmed for the amount of the decree. This court held that it urns error to enter judgment in the office without awarding a writ of enquiry.
These cases clearly show that under the Code of 1813, the award of a writ of enquiry was necessary in every case of an office judgment against a defendant, except case of an action of debt upon an instrument of writing for the payment of an ascertained sum of money, absolutely and unconditionally. The present Code, ch. 171, § 43, seems to have made no other change in this respect than to extend the exception to an action of debt against endorsers, as well as the drawer, of a bill of exchange or negotiable note;'and to an action of debt or scirefacias upon a judgment or recognizance; in which cases it had been held, as we have seen, that a writ of enquiry was necessary, under the Code of 1819. It follows, therefore, that an order for an enquiry of damages is necessary, under the present Code, when an office judgment is entered against a defendant in ejectment; unless, as is contended, there be something in chapter 135 of the Code, concerning “the action of ejectment,” which dispenses with the nécessity for such an order. Let us examine that question.
That chapter makes most important and radical changes' in the nature of the action of ejectment. It abolishes the fictitious features of the action; requires it to be conducted in the names of the real parties; gives it the effect of a writ of right, as well as of an action of ejectment under the former law; applies it to the recovery of dower, and to the recovery not only of the principal subject itself of the action, but of the mesne profits, &c., which were formerly recoverable only in an action of trespass therefor, brought after the conclusion of the action of ejectment; makes the judgment in the action *430 conc^usiTe as to the title or right of possession estabfished therein, subject to a saving in favor of persons disability; and abolishes real actions. It may snPPose(l that a law having such important objects in view would be carefully framed, and would not dispense with any precaution which might be necessary to prevent injustice. Accordingly we find that it contains infinite details as to the parties, pleadings, proofs, and other proceedings in the action, and expressly requires the defendant to he served, not only with the declaration, and notice of the fifing thereof, but after-wards also, with a rule to appear and plead. It is true that the law authorizes the declaration to be filed at rulesj or in court, instead of in court only, as under the old law; and section 12 provides, that “ upon fifing the declaration with proof of tfie service of notice thereof as aforesaid, the plaintiff shall he entitled to a rule upon the defendant, to appear and plead at the next rule 'day if the declaration be filed at rules, or if filed in court to appear and plead witliin such time as shall he prescribed by the court; and 'if, upon service of such rule, he shall fail so to appear and plead, his default shall be entered and judgment given against him.” But the only object of the law in authorizing these proceedings at rules, seems to he, to place the action of ejectment on the footing of other actions in that respect, and to enable the parties to mature the pleadings and have the case ready to be disposed of at the next term. It could not have been intended,\y implication merely, to effect so radical a change in the law as to authorize an office judgment against a defendant in ejectment which would become a final judgment of the succeeding term of the court, by mere operation of law, without the intervention of the court or a jury. It is true, there is in the said chapter no direction for an enquiry of damages 'á'ft'er-j.udgráént by default is entered at rules; but it is *431 also true that there is no direction therein that the office judgment shall become final on the last day of the next term or the 15th day thereof, if not previously set aside. In these respects the case was left to he governed by chapter 1/F1, § 42, as to office judgments generally. The direction for an office judgment, implies no direction to dispense with a writ of enquiry. Wherever pleadings are matured at rules, there may he judgment by default at rules. Wherever a writ of enquiry is awarded at rules, it is founded on a judgment by default in the office. So that, a direction in the law that the defendant’s “default shall be entered and judgment given against him” at rules, leaves undecided the question, whether a writ of enquiry is to be awarded or not, being perfectly consistent with either alternative.
Anciently, the action of ejectment had no other object hut to recover damages by a lessee against any person who ousted him of his term. Afterwards, complete justice was done in the action by applying it to the recovery, as well of the term itself, as of damages for the ouster and detention. Still later, it was used mainly for trying titles, and a string of legal fictions wasinvented to make it available for that purpose. In this last phase, the title or possession of the subject was the only substantial object of the suit, and damages for the ouster and detention, though still declared for, were merely nominal in the action itself, but were recoverable in a separate action of trespass for mesne profits. The present Code dispenses with the necessity of an action of trespass for mesne profits, and makes the damages recoverable in the action of ejectment. It requires the declaration to claim damages, and provides that “if the plaintiff file with his declaration a statement of the profits and other damages which he means to demand and the jury find in -his favor, they shall at the same time, unless the court otherwise order, *432 ges mesne profits any period not exceeding five years previously to the commencement of ^ie the verdict, and also the damages for any destruction or waste of the buildings or other property, during tlie same time for which the defendant is chargeable.” Chap. 135, § 30. Certainly, if such a statement ^g ffted, an order for an enquiry of damages would be necessary. Id § 31. And so also is such an order neeessary, though no such statement be filed, if the right or expired after the commencement of the suit; in which case the law provides, that “judgment shall be entered for bis damages, sustained from the withholding of the premises by the defendant, and as to the premises claimed the judgment shall be, that the defendant go thereof without day.” Id. § 28. In the latter case the plaintiff is certainly entitled to his costs, and the mode of recovering them is by continuing tire prosecution of the suit for the damages. He is at least entitled to nominal damages; and the only mode of recovering nominal damages, where there is a judgment by default, is by an enquiry of damages. That a plaintiff is entitled only to nominal damages, is not of itself a sufficient reason why there should not be an enquiry of damages. Ho aetion of debt sounds in damages ; and yet an order for an enquiry of damages is necessary in every action of debt in which there is an office judgment, except those enumerated in the Code, ch. 171, § 43; and is necessary even in those cases, if there be any apparent uncertainty as to the amount of the debt, or of tire credits applicable thereto. .The function of such an enquiry is, not only to ascertain the amount of damages, but to remove any uncertainty which may exist as to the subject in controversy or the amount thereof.
We conclude, upon this branch of the subject, that an office judgment in an action of ejectment, does not *433 become final without the intervention of the court or a jury, but there ought in every such ease to be an order for an enquiry of damages; and therefore, that the 44th section of chapter 171 of the Code, is not applicable to such action. •
The conclusion to which we have come upon the first ground of error, renders it unnecessary to express any opinion upon the other; and it would be improper to do so, especially as that ground impugns the decision of this court in Enders' ex'ors v. Burch, 15 Gratt. 64, which was a - unanimous decision of a court of four judges, whereas the court now sitting Consists of but three. As, however, the question was argued by the counsel in these cases, and has, to some extent, been reconsidered by the court, (all the members of which were also members of the court that decided that case,) it may be proper to state that two of the judges now sitting entertain some doubt of the correctness of that decision, and the court is therefore of opinion that a re-argument of the question ought to be heard whenever it may come up for decision before a full court.
In each of the three cases the judgment must be reversed, and the cause remanded to the Circuit court, with instructions to allow the plaintiffs in error to plead to issue if they shall again offer to do so, and for further proceedings therein to a final judgment, in conformity with the foregoing opinion.
Judgment reversed.