# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

### FRANKLIN JEWELRY COMPANY, INCORPORATED, ETC. V. SOL MASCH.

June 15, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Herman A. Sacks,* for the plaintiffs in error.

*Bertram S. Nusbaum* and *J. W. Eggleston,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action of assumpsit brought by Sol Masch, plaintiff, against Franklin Jewelry Company, Incorporated, and its five subsidiary or affiliated corporations, namely, Schneer's, Incorporated, Schneer's Atlanta, Incorporated, Schneer's Brooklyn, Incorporated, Schneer's Charleston, Incorporated, and Schneer's Charlotte, Incorporated, defendants.

The declaration alleges the following contract: On March 30, 1931, the defendant corporations (acting through "William Schneer, an officer of all the defendant corporations, and representing them jointly and severally") made an oral contract with the plaintiff by which they "jointly and severally" employed him to perform for them the services below mentioned.

(1) They employed him "to revise the entire system of bookkeeping then in use in connection with the business of the defendants wherever the said defendants operated their business, to-wit, Brooklyn, New York; Atlanta, Georgia; Charlotte, North Carolina; Charleston, South Carolina; Knoxville, Tennessee, and Norfolk, Virginia, and to devise a system in connection with which the entries could be made by an ordinary bookkeeper, and at the same time be so complete and elastic that the business of each store would be controlled and run by the executives of the defendant corporations with a minimum of labor." Such system was to be ready for installation as of May 1, 1931. For this work the plaintiff was to be paid a reasonable fee "plus all the traveling and hotel expenses incident to the doing of the

work," the fee to be "based on the time spent by the plaintiff together with his assistants and associates, plus its [the system's] utility; which the defendants did jointly and severally promise to pay."

(2) They employed him to "audit the books of the defendant corporations for the year 1931, make up a consolidated balance sheet based on this audit, and prepare Federal income tax returns for the calendar year 1931. For this portion of the work he was to be paid the definite sum of $1,500 in monthly installments of $125 each. All traveling and hotel expenses incidental to this branch of the work were to be borne by the plaintiff."

It then alleges that the plaintiff performed the services which he agreed to perform for the defendants; and that he is entitled to recover from them for the worth of his services in devising and installing the accounting system, which is $4,655, with interest from November 25, 1931; and that there is also due to him a balance of $500, with interest from November 25, 1931, for services rendered the defendants in auditing their books.

Franklin Jewelry Company, Incorporated, and Schneer's, Incorporated, appeared generally and filed pleas of *non assumpsit*. The other four defendants appeared specially and filed pleas to the jurisdiction of the court, which seem to have been later abandoned. Subsequently, on February 8, 1932, the plaintiff moved the court to require the defendants to file their grounds of defense, and the court directed them to do so. In response to this order, on March 8th, the following statement of grounds of defense was filed:

"This day came *Franklin Jewelry Company, Incorporated,* and *Schneer's, Incorporated,* by their attorney, and state herein that they will rely upon all defenses provable under the general issue, as well as any and all other defenses which may be pertinent from the evidence produced at the trial of this case, and in addition thereto, that the plaintiff agreed with the *defendants* to perform the services which he claims he performed for the sum of fifteen hundred

($1,500) dollars, payable in monthly installments of one hundred and twenty-five ($125) dollars each, all of which has been fully paid to the plaintiff." (Italics ours.)

When the case was called for trial on March 21st the other four defendants filed pleas of *non assumpsit,* but filed no grounds of defense.

The defendants in their petition admit that William Schneer and G. G. Fisher (who also took a large part in directing the work which was being done by the plaintiff and his assistants) were, respectively, the secretary and president "of all said defendant corporations," but assert that "the stockholders and creditors of said respective corporations are not identical."

From the evidence it can be gathered that Franklin Jewelry Company, Incorporated, was the parent corporation; that the other defendant corporations were subsidiaries or affiliates of it; and that all the stock of Schneer's, Incorporated, and Schneer's, Brooklyn, Incorporated, was owned by Franklin Jewelry Company, Incorporated. But the evidence is silent as to what part of the stock of the other three defendant corporations was owned by Franklin Jewelry Company, Incorporated, and as to the working agreements and relations which existed between the Franklin Jewelry Company, Incorporated, and its several subsidiaries and affiliates. All that appears on this point is that the books for the whole system were kept by the Franklin Jewelry Company, Incorporated, at its office; and that the system which was devised and installed by the plaintiff in the stores of the several corporations was devised to make it unnecessary for each of the corporations to have a bookkeeper, and to facilitate the keeping of the books of all at the office of the Franklin Jewelry Company, Incorporated, from original records made by the clerks in the several stores.

The court gave instruction 1 for the plaintiff, and instructions A, B and C for the defendants. There were no objections made by any party to any of the instructions

given, nor were any instructions which were asked for by any party refused. The instructions given read:

(1) "The court instructs the jury that if you believe from the evidence that the plaintiff was employed by the defendants to perform certain services in connection with devising and installing a new accounting system upon the understanding that the cost of the same to the defendants would be later determined and agreed upon, and that the said services were duly performed by the plaintiff but that the cost to the defendants were not agreed upon by reason of the refusal of the defendants to attempt so to do, you shall find your verdict for the plaintiff in whatever amount you shall deem reasonable and proper to compensate the plaintiff for devising and installing the system.

"In determining the amount of your verdict, it is proper for you to consider the knowledge, training and effort required on the part of the plaintiff, the value of these services to the defendants and what it would have cost the defendants to have had the same *devices* performed by some one or other than the plaintiff who possessed the same qualifications, experience and training."

(A) "The court instructs the jury that the burden is on the plaintiff to prove his case by a preponderance of the evidence."

(B) "The court instructs the jury that if you believe, from the evidence, that the plaintiff agreed to perform for the defendants the services he is alleged to have performed for the sum of fifteen hundred ($1,500) dollars, and that the defendants have paid him such sum, or whatever sum was due the plaintiff at the time he brought this action, then you must find for the defendants."

(C) "The court instructs the jury that if you should believe, from the evidence, that there was no definite agreement entered into between the parties for the work claimed to have been done by the plaintiff, then the plaintiff would only be entitled to recover a reasonable value for said ser-

vices, and the burden is on the plaintiff to prove that there was no agreement for a definite compensation."

The evidence is devoted practically exclusively to two points, (1) the terms of the contract made with the plaintiff by or through Schneer, and (2) the reasonable value of the plaintiff's services in devising and installing the accounting and bookkeeping system. It is impossible to read the pleadings, evidence and instructions and not reach the conclusion that until after the verdict all the defendants relied entirely upon a single defense, which was this: The agreement made with the plaintiff by the defendants through Schneer was that all the work mentioned in the declaration was to be done for the sum of $1,500, plus all traveling expenses, and that of this amount $1,250 had been paid to the plaintiff at the time of the trial, leaving only a balance of $250 due him, which they were ready and willing to pay the plaintiff.

The jury returned this verdict: "We, the jury, find for the plaintiff the sum of $2,750 for devising and installing the system."

The defendants moved the court to set aside the verdict on the following grounds: "(1) The verdict was contrary to the law and the evidence. (2) The verdict as a whole was excessive. (3) The verdict was excessive as to each of the defendants. (4) No joint judgment or verdict could be rendered against all defendants for the reason that to do so would make each defendant corporation liable for a debt due by the other defendant corporations, thereby making each corporation an accommodation guarantor or surety for the other corporations, and would require each corporation to pay for services which it did not receive but which were received by the other corporations, and for the reason that if the defendants were liable at all, each was liable separately for the value of the respective services performed for it by the plaintiff."

The court overruled this motion, and entered a joint judgment against all the defendant corporations in accordance

with the verdict. To this judgment the defendants have been granted a writ of error.

The only assignment of error is that the court erred in not setting aside the verdict upon all or at least one of the grounds mentioned in their motion made before the trial court.

The plaintiffs in error thus sum up their contention under the first ground upon which they moved the court to set aside the verdict: "The plaintiff's evidence, incredible as we have shown it to be, contradicted by the testimony of the expert witnesses and by his own acts, is clearly insufficient to warrant a verdict in his favor." The gist of this contention is that the testimony of Masch with reference to the terms of the contract made by him with the defendants is so incredible that it is unworthy of belief, and that, as a matter of law, the jury should have accepted the testimony of their witnesses as to the terms of the contract.

■ The court did not err in refusing to set aside the verdict on this ground. It is not inherently incredible that the parties made a contract such as Masch testified was made. Whether the terms of the contract were as testified to by Masch, or as testified to by the witnesses introduced by the plaintiffs in error, was simply an issue of fact arising upon conflicting testimony, which turned primarily on the credibility of the witnesses.

■ There is no merit to the contention that the verdict should have been set aside on the ground that "as a whole it was excessive." The jury having found that the terms of the contract were as alleged in the declaration, i. e., as testified to by Masch, there was ample evidence to support a verdict finding that under the terms of that contract $2,750 was a reasonable sum to be allowed Masch for his services in devising and installing the accounting and book-keeping system.

The third ground, i. e., that the verdict was excessive as to each of the defendants, has no pith in it except as a corollary of the fourth ground, and under the view which we take of the case need not be further noticed.

Under the fourth ground upon which they moved the court to set aside the verdict, the plaintiffs in error do not make the contention that Schneer and Fisher did not make a contract with Masch which undertook to obligate all six corporations jointly to pay for all the services rendered by Masch under the contract. Their contention is this: As to any particular one of the corporations such contract was *ultra vires* and void except as to the amount, or value, of the services rendered by Masch to that corporation. Therefore, the jury should have divided the total amount which Masch was entitled to recover among the several corporations in the proportion that the services were rendered to each corporation, and should have found separate verdicts against each corporation for its proper part of the whole amount of recovery allowed it. This contention is not well made for several reasons.

██ On the theory that affirmative defenses must be specially pleaded, there is much authority to the effect that a corporation cannot avail itself of the defense of *ultra vires,* but must plead it specially, unless its lack of capacity or want of power to make the contract or perform the act in question affirmatively appears on the face of the declaration or complaint. 5 Thompson on Corp. (3d ed.) section 3268, pages 99-100, and cases there cited. See, also, section 3267. But under the broad scope given to the issues *nil debet* and *non assumpsit* in Virginia, it would appear that a corporation may avail itself of that defense under those pleas. Where with such a plea a statement of the grounds of defense is filed which specifically assert the lack of capacity or want of power, thereby specifically putting it in issue, any objection to permitting the defense under the plea of *non assumpsit* would seem to be purely technical. (See in this connection *Dudley* v. *Carter, etc., Co.,* 125 Va. 701, 706, 100 S. E. 466.) But, however the defense is made, a corporation is *prima facie* presumed to have acted within its corporate powers until the contrary is shown, and the burden of proving that its contract was *ultra vires* rests upon the party as-

serting it. 4 Thompson on Corp. (3d ed.) section 2839, page 542; 6 Fletcher Cyc. Corp. (Permanent Ed.), section 2505, page 224; 3 Cook on Corp. (8th ed.) section 681, page 2677; *Kennerly* v. *Columbia Chem. Corp.*, 137 Va. 240, 246, 119 S. E. 265. There are some exceptions to the last statement, but the case at bar does not fall within them.

In this case the defense of *ultra vires* was not specifically put in issue by the pleadings, nor was it raised by the evidence. The charter of none of the corporations was introduced in evidence; the record is silent on the subject of the corporate powers of the defendants; and the evidence is wholly insufficient to sustain the defense of *ultra vires*, even if it had been specially pleaded.

Further, the question was not raised by any instruction which was asked for, or by any objection made to any instruction given, nor was anything done or said during the trial, before the verdict was rendered, to indicate or suggest to the court or jury that such a defense was relied upon. On the contrary, the defendants, without objection, permitted the court to submit the case to the jury under instructions which, in effect, told it that if it believed the plaintiff's testimony as to the terms of the contract in question, it must find a verdict for the plaintiff against the defendants jointly for such an amount as it believed from the evidence to be a reasonable and proper compensation to the plaintiff for devising and installing the accounting and bookkeeping system. After the jury had found against the defendants it was then too late to raise the point that the contract was *ultra vires*.[1]

We find no error in the judgment of the court, and it will be affirmed.

*Affirmed.*

[1] That had the defense been specifically pleaded and there had been evidence to sustain it, the failure to ask an instruction on the point would not have precluded the defendants from raising the question on a motion to set aside the verdict, see *White & Co.* v. *Ryan*, 131 Va. 619, 109 S. E. 426.